**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

UNITED STATES OF AMERICA,

               Plaintiff,

     v.

GRANT L. GLOVER

             Defendant.

CASE NO. 21-cr-00045

JUDGE: MATTHEW J. KACSMARYK
MAGISTRATE JUDGE: LEE ANN RENO

**<u>DEFENDANT'S MOTION FOR
VARIANCE AND MEMORANDUM IN
SUPPORT OF SENTENCING</u>**

Now comes the Defendant, Grant L. Glover, by and through undersigned counsel, Eric F. Long and Natalie Archer, and hereby respectfully submits the instant Memorandum in Support of Sentencing for this Honorable Court's consideration in determining an appropriate disposition in this matter. Additionally, Mr. Glover respectfully requests a "variance," outside the Guidelines pursuant to the district court's discretionary authority under 18 U.S.C § 3553(a). The instant Memorandum contains information pertaining to Mr. Glover that is relevant to this Honorable Court's determination of a sentence that is sufficient, but not greater than, that which is necessary to satisfy the principles and purposes of federal sentencing.

Respectfully Submitted,

/s/ Natalie Archer
Natalie Archer
SBN 24000441
801 S. Fillmore, Ste 710
Amarillo TX 79101

/s/ Eric F. Long
ERIC F. LONG (0093197)
Friedman & Nemecek, L.L.C.
1360 East 9th Street, Suite 650
Cleveland, OH  44114
Ph. (216) 928-7700
E-Mail: efl@fanlegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed on this 26th day of April, 2022, by CM/ECF, which will send a notification of electronic filing (NEF) to the following: Assistant United States Attorneys, Anna Marie Bell, 500 S. Taylor Street, Suite 300, Amarillo, TX 79101.

*/s/ Eric F. Long*
ERIC F. LONG

## <u>CERTIFICATE OF CONFERENCE</u>

In accordance with Local Rule 47.1, I hereby certify that a conference was held on April 26, 2022 between Attorney Eric Long and Assistant United States Attorney Anna Marie Bell. I hereby certify that the foregoing Motion is **opposed**. The Government has indicated to undersigned counsel that it objects to a variance.

## MEMORANDUM IN SUPPORT

### I.     STATEMENT OF THE CASE

On or about October 27, 2021, Mr. Glover appeared before this Honorable Court and entered a plea of "Guilty" to one (1) count of Distribution and Possession with Intent to Distribute Psilocin and Aiding and Abetting, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C) and 18 U.S.C. § 2, a Class C felony. At the present time, Mr. Glover awaits the opportunity to stand before this Honorable Court for the imposition of his sentence. Mr. Glover respectfully requests that the Court consider the information set forth in the instant pleading, as well as additional evidence and arguments presented at the sentencing hearing, in determining a fair and appropriate disposition of this case.

It is respectfully submitted that a person cannot be judged, nor their character defined, by a series of isolated acts or bad decisions. Indeed, Mr. Glover broke the law. However, he has been diligent in his efforts to understand why he made the choices he did.  He has accepted responsibility and he is remorseful for his actions. Mr. Glover has taken a hard look in the mirror over the last several months and made it his mission to drastically change the man he sees looking back at him. He knows his conduct is, and was, unacceptable and he is devastated for the position he has put his family in.

### II.     AT THE TIME OF SENTENCING, IT WILL BE THIS HONORABLE COURT'S DUTY TO IMPOSE A SENTENCE SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO COMPLY WITH THE PURPOSES OF FEDERAL SENTENCING SET FORTH IN 18 U.S.C. § 3553(a).

In light of *United States v. Booker*, 543 U.S. 220 (2005), this Honorable Court is required to engage in a multi-step analytical process at sentencing. First, the Court must determine, after making appropriate findings of fact, the applicable Guidelines range. *Gall v. United States*, 552 U.S. 38, 49-51 (2007). After making appropriate findings of fact, the Court must then determine

3

whether a sentence within that range serves the factors set forth in § 3553(a). *Id*. Finally, the Court must articulate the reasons for the sentence imposed in light of the factors set forth in 18 U.S.C. § 3553(a). *Id*.

### A.  Calculating the Appropriate Guidelines Range.

As an initial matter, Counsel reiterates that Mr. Glover accepts full responsibility for his offenses. More specifically, Mr. Glover fully accepts his role in the criminal drug conspiracy, as he did engage in the distribution and possession with intent to distribute psilocin.  Mr. Glover's life has forever been changed as a result of his choices and the repercussions of his illegal conduct. Mr. Glover recognizes the severity of this situation and is dedicated to remaining entirely separated from the behavior that gave rise to the instant matter. He is remorseful and contrite for his misconduct and desires the opportunity to continue his efforts of being a productive and law-abiding citizen after the disposition of this case. As set forth in the Presentence Investigation Report, Mr. Glover's guideline calculation is as follows:[1]

| Count 5: Distribution and Possession with Intent to Distribute Psilocin and Aiding and Abetting | | |
|---|---|---|
| Base offense level: At least 1,000 kilograms but less than 3,000 kilograms of converted drug weight | 30 | §2D1.1(a)(5)&(c)(5) |
| Acceptance of Responsibility | -3 | §3E1.1(a)&(b) |
| **Total Offense Level after Acceptance of Responsibility** | **27** | |

As noted above, the United States Supreme Court requires sentencing courts to engage in a multi-step analytical process at sentencing. See *Booker*, 543 U.S. 220.  Post-*Booker* opinions make clear that, although a sentencing court must "give respectful consideration to the Guidelines, *Booker* permits the court to tailor the sentence in light of other statutory concerns as well."

---

[1] An agreed upon guideline calculation is not contained in the plea agreement.

*Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (internal quotation marks and citation omitted). Accordingly, although the "Guidelines should be the starting point and the initial benchmark," district courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in §3553(a), subject to appellate review for "reasonableness." *Pepper v. United States*, 562 U.S. 476, 131 S. Ct. 1229, 1241 (2011), *quoting Gall v. United States*, 552 U.S. 38, 49-51, 128 S. Ct. 586 (2007).

The Supreme Court has expressly directed that an "individualized assessment" of the case "based on the facts presented" is required. *Gall*, 552 U.S. at 50. Such analysis should be guided by "reasonableness" and an "individualized application of the statutory sentencing factors." *Id*. at 46-47. A sentencing judge retains "wide latitude to decide the proper degree of punishment for an individual offense and a particular crime." *United States v. Cavera*, 550 F.3d 180, 189 (2nd Cir. 2008).

**B. Examination of the Factors Set Forth in 18 U.S.C. § 3553(a).**

**1. Nature and Circumstances of the Offense and the History and Characteristics of Mr. Glover.**

*a. Nature and Circumstances of the Offense.*

When determining an appropriate disposition, the sentencing court shall consider the nature and circumstances of the offense. *See* 18 U.S.C. § 3553(a)(1). Here, Mr. Glover was arrested in connection with a drug trafficking conspiracy involving nine total defendants, including Mr. Glover. First and foremost, Mr. Glover accepts full responsibility for his illegal conduct. Moreover, he accepts full responsibility for the role he played in the conspiracy. Namely, he acknowledges that by supplying mushrooms containing psilocin, he furthered the overall conspiracy, which was significantly larger than just him or the mushrooms he contributed. The converted drug weight, including the seized drugs and cash taken from co-defendants, equates to

1,670.26 kilograms. Accordingly, he did not file any objections to the PSR, nor does he now allege that the PSR was incorrect. Mr. Glover appreciates that in a conspiracy case, being in for some is the same as being in for all when it comes to the calculation of the sentencing guidelines. However, when determining a fair and appropriate disposition, this Court is tasked with examining the specific nature and circumstances of the offense. *See* 18 U.S.C. §3553(a). Thus, Mr. Glover seeks to explain the full extent of his conduct, and his overall role in the charged conspiracy.

The drug conspiracy consisted largely of marijuana, but also included lesser amounts of psilocin and alprazolam. Mr. Glover accepts full responsibility for possessing, with the intent to distribute, mushrooms containing psilocin. In total, these dried mushrooms had a net weight of 75 grams. (The base offense level for the possession with intent to distribute 75 grams of psilocin is 16 for a range of 33-41 months.)

Because of the conspiracy, Mr. Glover is being held responsible, in the form of "relevant conduct," for not only the psilocin for which he contributed, but also the marijuana, alprazolam, and currency, which was all converted into drug weight. Upon information and belief, it is the Government's contention that Mr. Glover was a large supplier of marijuana and other drugs to Demarcus Grabert, and therefore, the conspiracy. In other words, while the enhancement has not been applied to Mr. Glover, the Government views him as an integral part of the conspiracy, along with Mr. Grabert. As such, for the purposes of the presentence report and the relevant guidelines, Mr. Glover is being held responsible for 1,670.26 kilograms of converted drug weight. While Mr. Glover is certainly remorseful for his actions in this instant matter, he also seeks to explain the full nature of his involvement with Mr. Grabert and the conspiracy.

Mr. Glover met Mr. Grabert in July of 2019 while Mr. Grabert was visiting Mr. Glover's hometown of Los Angeles, California. *See* Affidavit of Demarcus Grabert, attached hereto as

_Exhibit A_. The two met as they were both waiting in line at Cookies, a legal cannabis dispensary where a special cannabis strain called, "Cereal Milk" was being released on a limited basis. _Id._ The two began conversing with each other, where they quickly became friends. _Id._ This friendship led the two of them to visit each other and travel with one another. _Id._ During their friendship, Mr. Glover told Mr. Grabert about his favorite dispensaries in Los Angeles, and the two visited many of those dispensaries while Mr. Grabert was visiting. On occasion, Mr. Glover shared marijuana with Mr. Grabert for personal use. _Id._ However, Mr. Glover never sold marijuana to Mr. Grabert. _Id._ To the extent that Mr. Grabert obtained marijuana or THC products from California, those products were bought directly by Mr. Grabert or others from Texas on his behalf. _Id._

While Mr. Glover was aware of Mr. Grabert's operation, and the fact that he was shipping products from California to Texas, Mr. Glover did not provide any marijuana to Mr. Grabert, was not involved in the shipping of marijuana to Mr. Grabert, nor was he aware of the quantity or volume of marijuana Mr. Grabert was involved with. _Id._ Simply put, Mr. Glover was not aware of, nor was he involved with, the vast majority of the conspiracy at issue here. Nonetheless, Mr. Glover is cognizant that he has accepted responsibility for his involvement. In no way is Mr. Glover attempting to profess his innocence, make excuses for his conduct, or object to what is contained in the PSR. However, the aforementioned is critical for this Court to consider when examining that nature and circumstances of the offense. Again, Mr. Glover's contribution was 75 grams of mushrooms containing psilocin, which served as the basis for his change of plea.

### b. _History and Characteristics of Mr. Glover._

In _Pepper_, _supra_, the United States Supreme Court endorsed the notion that post-_Booker_ sentencing must focus as much on the offender, his individual background, and his need for services and rehabilitation as on the offense committed. According to the Court, "highly relevant—

if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. Permitting sentencing courts to consider the widest possible breadth of information about a defendant ensures that the punishment will suit not merely the offense but the individual defendant." *Pepper*, 131 S. Ct. at 1240 (internal citations omitted).

With the above statement from *Pepper* in mind, Mr. Glover respectfully submits that his character and background are highly relevant and essential to the Court's determination of an appropriate sentence. Born on April 14, 1988 in Bartow, Florida, Mr. Glover spent the early part of his childhood residing with his mother and father. *See* Presentence Investigation Report ("PSR") at ¶91. When Mr. Glover was four or five years old, his father left the family home, which had a tremendous impact on Mr. Glover. *Id.* Mr. Glover recalls that his mother eventually began dating other men, who had a negative impact on Mr. Glover's childhood. *Id.* Specifically, Mr. Glover remembers one of his mother's boyfriends forcing Mr. Glover to bring him alcoholic beverages on a regular basis, which eventually led to Mr. Glover being permitted to consume alcohol at the age of six. *Id.*

Put simply, Mr. Glover had a tremendously difficult childhood. Mr. Glover's mother was forced to work long and strenuous hours to keep him and his four siblings from residing in lower class neighborhoods. *Id.* However, because of these long hours, Mr. Glover and his twin sister often had to stay overnight with other family members, most of whom lived in government funded housing. *Id.* at ¶ 93. During this time, Mr. Glover was exposed to various drugs and violence. *Id.* While Mr. Glover was staying with these family members, he recalled learning about drugs, as those who were supposed to care for him often used drugs in front of him. *Id.* As a way to combat

his environment, Mr. Glover's parents signed him up to play multiple sports throughout his childhood, which he enjoyed. *Id.*

Despite his parents' efforts to shield Mr. Glover from exposure to sex, drugs, and violence, Mr. Glover has vivid memories of being exposed to these things at an early age. For example, Mr. Glover remembered that the neighborhood he grew up in often hosted swinger/sex parties, and that Mr. Glover could simply climb a tree in his backyard and see naked adults. *Id.* at ¶94. Further, at the age of six or seven, one of Mr. Glover's neighbors shot and killed his own wife and kids, a memory that has had a lasting impact on Mr. Glover. *Id.* Throughout his childhood, Mr. Glover had to lean on his parents and four siblings, whom he still has strong relationships with.

Despite his difficult upbringing, Mr. Glover has done what he can to work hard and live a productive life. While Mr. Glover is not married, he is currently in a long-term committed relationship with Amanda Evans, who is employed by Kiva, a microfinance company, in California. The two have been together since 2018. *Id.* at ¶ 97. Ms. Evans has been a tremendous support system for Mr. Glover, as he described her as "more than supportive of him and his children." *Id.* Ms. Evans motivates Mr. Glover daily to achieve his goals and to put his illegal conduct behind him. Put simply, Ms. Evans is a light in Mr. Glover's life. With no history of substance abuse or criminal history, Ms. Evans is someone who makes Mr. Glover stive to be better, not only for her, but his two children.

Mr. Glover has two young children, both of whom were born from prior relationships. *Id.* at ¶¶ 99-100. Mr. Glover has one daughter, Kennedy, age 7, and one son, Grant III, age 9. Both Kennedy and Grant III reside with their mothers in Atlanta, Georgia and Miami, Florida, respectively. *Id.* Mr. Glover has joint custody of both children; however, he currently has a pending case for full custody of Kennedy, as Kennedy's mother is not financially stable. *Id.* Upon his

release, Mr. Glover plans to continue his pursuit of full custody, so that Kennedy can live with Mr. Glover in California and enroll in acting classes. *Id.*

Aside from his family and Ms. Evans, Mr. Glover also has a close network of peers that he turns to for guidance and support. Mr. Glover stated that most of his friends are college teammates and classmates who are successful athletes and business owners with families. *Id.* at ¶ 101. One of these peers is Mr. Glover's brother, Mavolio, who serves as Mr. Glover's mentor and role model. *Id.* Mavolio was the first in Mr. Glover's family to graduate college and get married, which inspired Mr. Glover to be a father and go to college himself. *Id.*

Upon his release, Mr. Glover has set lofty goals for himself. On top of striving to be a full-time father and provider for Kennedy, Mr. Glover also plans to finish obtaining his bachelor's degree in Kinesiology at the University of Southern California. From there, he plans on pursuing his Master's degree in Business Management. Mr. Glover is committed to separating himself from the people and actions that led him to his current situation, and he knows that obtaining a college degree and pursuing a career he is passionate about is the critical first step. These goals, as well as his familial responsibilities, give Mr. Glover the drive necessary to be both a law-abiding and productive member of society.

### c. *Mr. Glover's Remorse and Contrition.*

Mr. Glover completely accepts responsibility for his conduct in this case, as evidence by his plea of "Guilty." Mr. Glover again conveyed his sincere remorse during his PSR interview. Here, Mr. Glover stated,

> I acknowledge that my decision and my decisions alone put me in my current situation. I have had the benefit of looking back over the course of the last seven months to examine how and why I got to this point. I accept full responsibility for my actions that led to my incarceration and to the potential for even more time away from my family and loved ones. After failing to research and educate myself on the

10

instant offense, I now understand that this is not a truly victimless crime and my actions remain illegal. Moving forward, I am dedicated and committed to working hard the right way to properly provide for my family and achieve my goals in life. Not only do I apologize to the community but to those that have been impacted by my actions. Also, I apologize to my family for putting them in a position to be without my support for so long and for the pain that I have caused them. Last but not least, I want to apologize to the court and other law enforcement officers involved in dealing with the instant offense. As a result, I can't wait to return to my family and kids, but most importantly to be labeled as a responsible law-abiding citizen.

PSR at ¶ 62.

At the time of sentencing, Mr. Glover will stand before this Honorable Court, as he is now, humbled, remorseful, and contrite. He understands that his conduct was wrong, and he is embarrassed and ashamed for putting himself and his loved ones in this difficult situation. Mr. Glover desperately wants to atone for his poor choices and serve as a positive example for his children. He is adamant that these offenses are not representative of his general character. Frankly, his involvement in this case stems from his previous ignorance as to how impactful drugs are to the communities they invade, particularly outside of a jurisdiction where drug laws are more relaxed.

Even when the Sentencing Guidelines were mandatory, courts recognized the significant mitigating effect of the facilitation of the administration of justice and the defendant's expression of remorse. *See, e.g.*, *United States v. Rudolph*, 190 F.3d 720, 722-23 (6th Cir 1999); *United States v. Fagan*, 162 F.3d 1280, 1284-85 (10th Cir. 1998) ("[b]ecause remorse is not a prohibited factor, but a factor already considered in the Sentencing Guidelines, a sentencing court may depart downward if it finds that remorse is present to an exceptional degree"); *United States v. Garcia*, 926 F.2d 125 (2d Cir. 1991); *United States v. Volpe*, 224 F.3d 72 (2d Cir. 2000) (noting that activities facilitating the proper administration of justice may form the basis for a downward departure). After the Guidelines were made advisory, these factors remain a relevant consideration

for courts in determining a reasonable sentence. *See* 18 U.S.C. § 3553(a).

At sentencing, Mr. Glover will candidly discuss his remorse, not only for committing these offenses, but also for the resulting harm that it has caused any victims, his family, and the resources spent by the Government and this Honorable Court. Since the inception of this case, Mr. Glover has been incarcerated.  It has had its intended effect and even without the prospect of additional time, Mr. Glover recognizes that prison is not where he wants to be. Mr. Glover will accept this Court's sentence and serve it, but moving forward, every decision Mr. Glover makes will be to avoid repeating his poor choices.  Mr. Glover has certainly learned his lesson as a result of this case and submits that a substantial term of incarceration is not necessary to ensure that he does not find himself in a similar predicament in the future.

### d.  Support of Family and Friends.

District courts have recognized the importance of a defendant's strong social support system in fashioning a sentence that is sufficient, but not greater than necessary to satisfy the principles and purposes of federal sentencing. *See United States v. Hall*, 698 Fed.Appx. 217, 218 (5th Cir. 2017) (noting the district court's decision to point out defendant's family support as a mitigating factor); *United States v. Wachowiak*, 496 F.3d 744, 747-48 (7th Cir. 2007) (explaining that "[w]here the Court has found strong social support from family, friends, and others the Court has deemed a lower sentence appropriate"); *see also United States v. Smith*, 275 Fed.Appx. 184, 186 (4th Cir. 2008) (relying on the defendant's strong family ties when imposing a sentence that varied 24 months below the calculated Guidelines range in a child pornography prosecution).

In anticipation of sentencing, the undersigned has received letters from Mr. Glover's friends and family wishing to make their support of Mr. Glover known to this Honorable Court. Despite this charge and his poor decisions, these letters portray Mr. Glover as a kind, hard-

working, thoughtful, and supportive family man. *See* Letters of Support attached hereto as *Exhibits "B" – "L."* More importantly, these letters demonstrate the significant roles Mr. Glover has played in various lives, including being a loving friend and family member, to a helping hand in the community.

Mr. Glover's supporters continuously describe him as a thoughtful, caring, and loving man, who goes to great lengths to help bring a smile to those he loves. Despite knowing Mr. Glover for varying lengths of time, ranging from a lifetime to a few short years, a common theme amongst his supporters is the overwhelming amount of love Mr. Glover has shown them, and the tremendous impact he has had on their lives.

Graneshia Glover, Mr. Glover's twin sister, has always been able to count on Mr. Glover to be a helping hand and positive role model. In her letter, she states,

> my brother Grant Glover, has always been there for my family and me. He has always been willing to lend a helping hand with everything from studying for a test to being there to talk about how my day went. I have always found him highly kind, dependable, well regarded among his peers, courteous, and a positive role model to his children, family, and friends.

*See* Letter of Support from Graneshia Glover, attached hereto as *Exhibit B.* Graneshia believes Grant has played a significant factor in becoming the person she is today and is confident Mr. Glover's good deeds will continue upon his release. *Id.*

Mr. Glover's thoughtful and caring nature is echoed by two of Mr. Glover's oldest friends, Brittany Terrell and Paul Muse. Ms. Terrell recalls meeting Mr. Glover as a first-year student at Florida Atlantic University. *See* Letter of Support from Brittany Terrell, attached hereto as *Exhibit C.* As a new student, Ms. Terrell did not know anyone else on campus. *Id.* However, Mr. Glover quickly made it his duty to become a "big brother" to her, ensuring that she was always safe and keeping up with her academics. *Id.* During her second year at college, Ms. Terrell was severely

injured in a car accident. *Id.* Despite not having a car of his own on campus, Mr. Glover would seek the help of other teammates or students to help Ms. Terrell travel back home to Miami whenever she needed. *Id.* Ms. Terrell states, "[Mr. Glover] would move mountains for anyone he loved." *Id.* While his incarceration came as a shock to Ms. Terrell, she is not surprised that Mr. Glover has accepted full responsibility for his actions, and she is confident that he is still the loving and encouraging person she met over a decade ago. *Id.*

Like Ms. Terrell, Mr. Muse met Mr. Glover at Florida Atlantic University, where the two were football teammates. *See* Letter of Support from Paul Muse, attached hereto as *Exhibit D.* As an older teammate, Mr. Muse remembers that Mr. Glover gravitated toward him, acting like a little brother. *Id.* The two quickly became friends and have maintained a close relationship since. *Id.* Similar to Ms. Terrell, Mr. Muse recalls a time where Mr. Glover went to great lengths to help in a time of need. Specifically, Mr. Muse writes, "I can think back to a time immediately after college, . . . I had found myself at one of if not the lowest points in life and my greatest time of need. The only person that lent any sort of help in that time was [Grant]. That is an action that is typical of Grant." *Id.* Mr. Muse also highlights that, "regardless of what [Grant's] past may say on paper, I know Grant to be a charismatic, hard-working and loving individual, who only wants to provide for his children to the best of his abilities." *Id.*

Another common theme amongst Mr. Glover's supporters is Mr. Glover's infectious spirit and the positivity he brings to his loved ones and his community. Viv Cortez, a friend of Mr. Glover, describes him as one of the kindest, most genuine people she knows. *See* Letter of Support from Viv Cortez, attached hereto as *Exhibit E.* Ms. Cortez states that Mr. Glover always encourages those around him to be the greatest version of themselves and to trust in God. *Id.* Like

Mr. Muse, Ms. Cortez knows that Mr. Glover's mistakes do not define him and offers her continued love and support to Mr. Glover. *Id.*

Mr. Glover's spirit is echoed by Alanna Fredieu-Porche, who upon meeting Mr. Glover, quickly noticed how loving and caring he was to all of the people around him. *See* Letter of Support from Alanna Fredieu-Porche, attached hereto as *Exhibit F.* Ms. Fredieu-Porche has witnessed Mr. Glover's efforts to remain close with his children and to provide for them and their mothers, despite living so far away. *Id.* Ms. Fredieu-Porche has also been impressed by Mr. Glover's willingness to give back to the community. As a chef, Ms. Fredieu-Porche remembers that Mr. Glover has helped and encouraged her to give catering leftovers to the homeless community, and calls Mr. Glover one of the kindest and most caring men she has ever met. *Id.*

The fact that Mr. Glover enjoys the support of not only his family and long-time friends, but also several newer friends, is particularly compelling. It is not often that such strong letters of support come from an offender's newly acquired friends, who have far less allegiance to the offender when compared to family or life-long friends. Should they so choose, these supporters have the option to never speak to or see Mr. Glover again. Despite the lack of ties connecting them to Mr. Glover, and despite the relatively short time they have known him, each supporter conveyed their unwavering support for him, and relayed the significant impact that he has had on their lives. This truly shows the kind and compassionate person that Mr. Glover is and demonstrates that these offenses do not define him as a person or alter his supporters' admiration.

Moreover, the attached letters confirm that Mr. Glover has a strong support network that is dedicated to ensuring that he succeeds in life. These individuals have conveyed their unwavering love and support for Mr. Glover as well as their sincere intentions to do whatever is needed to ensure that he leads a productive and law-abiding life. These letters further convey the significant

impact Mr. Glover has had on countless individuals and the devastating impact that a lengthy sentence would have on them. Mr. Glover's supporters are confident that he can continue making positive strides after the conclusion of this matter. It is respectfully submitted that his strong support system and demonstrable remorse all serve to reduce the likelihood that he would commit any future offenses should this Honorable Court refrain from sentencing him to a substantial term of incarceration.

Mr. Glover is sincerely remorseful for his actions. He has used his time incarcerated to reflect on his past choices and understand why he put himself in the current predicament. This time has allowed Mr. Glover to reevaluate his life and come to the realization that he must change his ways. Mr. Glover wants nothing more than to be able to be with his family and watch his two young children grow. As such, he is committed to leading a law-abiding lifestyle and becoming a productive member of society.

    **2.**  **Need for Sentence Imposed – To Reflect the Seriousness of the Offense, To Promote Respect for the Law, and to Provide Just Punishment for the Offense; To Afford Adequate Deterrence to Criminal Conduct, and To Protect the Public from Further Crimes of the Defendant.**

At the time of sentencing, it will be this Honorable Court's duty to impose a sentence sufficient, but not greater than necessary, to comport with the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2)(A)-(D). These purposes include promoting respect for the law, which incorporates providing just punishment in light of the seriousness of the offense; affording adequate deterrence; protecting the public from further crimes by Mr. Glover; and providing him with any needed rehabilitation and treatment.

### a.   *Punishment and Deterrence*

When applying the above-referenced factors to the case at bar, it is apparent that a substantial term of incarceration is not necessary to achieve the sentencing goals outlined in 18 U.S.C. § 3553. As a result of this instant matter, Mr. Glover has already suffered significantly. He has greatly tarnished his reputation and has placed himself and his loved ones in a challenging predicament. In addition to facing a loss of liberty, generally, Mr. Glover will suffer from multiple collateral consequences. These include not being able to see and care for his young children and putting his educational and career aspirations on hold due to his incarceration.

The time that Mr. Glover has been under Indictment in this case, as well as the potential sentence of incarceration that could be imposed, have had a dramatic impact on him. He has had ample time to reflect upon his conduct and the consequences for his wrongful behavior. Most importantly, he has been able to see first-hand the dire consequences that his actions, and others like it, have on communities in other parts of this country. Further, he has used his time while incarcerated to furnish a plan to change his ways and ensure he is never in a similar predicament. The prospect of a term of incarceration, beyond the time he has already spent in prison, is not lost upon him.

It is respectfully submitted that a substantial term of incarceration is not necessary to satisfy either general or specific deterrence, particularly in light of his familial responsibilities and strong support system – both of which serve to reduce the likelihood of recidivism.

### b.   *Collateral Consequences and the Need for Incarceration.*

Mr. Glover, who has two young children, will be unable to support his family during any term of incarceration that would be imposed. Moreover, Mr. Glover's future educational plans will be placed on hold during any period of incarceration, thus hindering his ability to start a new career

and provide for his family. This exacerbates the collateral consequences a harsh sentence would have on Mr. Glover and his family following his release. Respectfully, a substantial term of incarceration is not necessary to satisfy the sentencing objectives set forth in 18 U.S.C. § 3553 and would be a particularly harsh punishment for Mr. Glover.

As previously discussed, any term of incarceration will further prevent Mr. Glover from being present in his young children's lives. Said plainly, with each passing day of incarceration, Mr. Glover will continue to miss watching his children grow up during these crucial years of their lives. His absence due to his current incarceration has been a great detriment to Mr. Glover, who misses his children dearly. More impactfully though, this absence will also be a great detriment to his children. While Mr. Glover is incarcerated, his children, who are innocent in all of this, have been and will be effectively fatherless – despite having a father that loves them very much. While Mr. Glover does not have full custody of either child, he remains an active and influential part of their lives. His ability to be present for his children, who mean the world to him, is severely diminished during any period of incarceration. Moreover, Mr. Glover is pursuing full custody of his daughter, so he can provide a more financially stable life and enroll her in acting classes. This will be far less possible should he be sentenced to a significant term of imprisonment.

These factors support the conclusion that Mr. Glover does not present a danger to the community and that he is unlikely to engage in unlawful conduct in the future. Since the inception of this case, Mr. Glover has had the opportunity to reflect upon his actions as well as the consequences that he would suffer should he commit any future criminal offenses. He has admitted his guilt and is fully committed to doing whatever is necessary to atone for his behavior. Accordingly, counsel submits that a substantial term of incarceration is not necessary in order to fulfill the principles and purposes of sentencing contained in 18 U.S.C. § 3553.

### 3.   Pertinent Policy Statements

Congress established the Sentencing Commission for the purpose of formulating and constantly refining the national sentencing standards. *See Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007).   In fulfillment of its role, the Sentencing Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Id*. at 574.

The Guidelines function to advance sentencing reform objectives such as reducing sentencing disparity, assuring certainty and severity of punishment, and increasing the rationality and transparency of punishment. *See* United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing*, 11-12 (Nov. 2004) (*Assessment*).   The Sentencing Commission collected, studied, and ultimately utilized data on past practices and recidivism rates in formulating the Guidelines. *Id*. at 14 (noting that the Guidelines are based in part on statistical analyses of pre-Guidelines sentencing practices); U.S.S.G. § 1A.1, introductory comments at ¶ 3.   The Sentencing Commission relied upon this data in formulating offense levels for each crime, with said offense levels corresponding to a particular recommended sentencing range. As such, the Guidelines typically represent a reasonable estimation of a fair sentencing range.

Public policy and statutorily created mandatory-minimum sentences have caused the Sentencing Commission to depart from precedent practices in setting offense levels for such crimes as fraud, drug trafficking, child crimes, and sexual offenses. *Kimbrough*, 128 S.Ct. at 567. For instance, since the promulgation of the Guidelines, the Sentencing Commission has dramatically increased the severity of sentences for financial offenses by raising the number of points imposed for the amount of the loss. Because the Commission failed to rely upon empirical data when making these changes – thus, failing to fulfill its institutional role – sentencing courts have

tremendous discretion to disagree, on policy grounds, with § 2B1.1's sentencing recommendations. *See Spears v. United States*, 129 S. Ct. 840, 843 (2009) (noting that when the Commission fails to fulfill its institutional role, a district court can vary from the Guidelines "based on *policy* disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case").

As previously stated, the Guidelines function to advance sentencing reform objectives such as reducing sentencing disparity, assuring certainty and severity of punishment, and increasing the rationality and transparency of punishment. *See* United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing*, 11-12 (Nov. 2004) (*Assessment*). Considering the full extent of Mr. Glover's involvement in furthering the conspiracy, aside from the 75 grams of mushrooms he provided, Mr. Glover respectfully submits that a sentence comparable to his co-defendants, excluding Mr. Grabert, is appropriate.

To date, five other defendants, excluding Mr. Grabert, have been sentenced in this matter. These sentences have ranged from 6-48 months. When comparing Mr. Glover's specific conduct with that of the other defendants, it is respectfully submitted that Mr. Glover's conduct is much more similar to that of the defendants who received sentences of 6-48 months, and much less similar to that of Mr. Grabert. This is especially true when considering Mr. Grabert's affidavit, wherein he explicitly states that Mr. Glover did not provide or sell any marijuana or other drugs other than mushrooms to the conspiracy.

In advance of Mr. Glover's sentencing, undersigned counsel consulted with Mark H. Allenbaugh, the Chief Research Officer and Co-Founder of Sentencing Stats, LLC, a research firm that provides statistical analysis of U.S. Sentencing Commission sentencing data to legal professionals across the country. *See* Declaration of Mark Allenbaugh, attached hereto as *Exhibit*

_M_. In his research, Mr. Allenbaugh found 121 cases of defendants similarly situated with Mr. Glover. _Id._ at ¶¶ 2, 13. Mr. Allenbaugh's statistical analysis shows that, in these cases, sentences below the Guidelines are not uncommon. For example, half of all similarly situated defendants received a sentence between 81 and 100 months. _Id._ at ¶ 15. Moreover, the statistics illustrate that court-initiated downward departures of variances were not uncommon, as there were 53 occurrences of such a departure of variance. _Id._ at ¶ 14. In these situations, sentences ranged anywhere from 20-97 months, with an average sentence of 66.8 months. _Id._ at ¶ 15.

### C. District Court's Discretionary Authority for Variance under 18 U.S.C. § 3553(a).

If, "after completing the Guidelines' three-step process the district court 'imposes a sentence that is outside the guidelines framework, such a sentence is considered a "variance."' The district court's authority to impose a variance is discretionary and stems from 18 U.S.C. § 3553(a)." _United States v. Jacobs_, 635 F.3d 778, 782 (5th Cir. 2011).

In the instant matter, Mr. Glover's base offense level is 30. This offense level is based solely on the fact that Mr. Glover is being held responsible for over 1,000 kilograms of converted drug weight. Again, this drug weight stems from the amount of marijuana and currency that was seized in connection with the instant matter. Upon information and belief, no significant amount of marijuana or currency was found on Mr. Glover or under his control, as all drugs and currency were located in the possession of Mr. Glover's co-defendants. As previously established, Mr. Glover did not supply this marijuana, nor was he aware of the amount of marijuana involved in the instant conspiracy. Rather, Mr. Glover was arrested and pled guilty to possession of mushrooms containing psilocin. The net weight of these mushrooms was 75 grams. Nevertheless, Mr. Glover understands the nature of conspiracy cases and why his contribution is considered with his co-defendants.

Put bluntly, Mr. Glover's guideline range changes drastically when calculated using the converted drug weight, as opposed to the 75 grams of mushrooms Mr. Glover was responsible for. Had Mr. Glover's offense level been calculated using the 75 grams of mushrooms only, Mr. Glover's base offense level is 16, before acceptance of responsibility. With a base offense level of 16, Mr. Glover's guideline range is significantly less than his guideline range at level 30. Specifically, his guideline range is 33-41 months. With acceptance of responsibility, Mr. Glover's guideline range in this scenario is 24-30 months, which is similar to the sentences that Mr. Glover's co-defendants, excluding Mr. Grabert, received. Again, Mr. Glover's conduct is much more similar to that of these co-defendants, and much less similar to Mr. Grabert's conduct. Accordingly, Mr. Glover submits that a similar sentence, for similar conduct, is appropriate here, and thus, he respectfully requests a variance.  Moreover, Mr. Glover respectfully submits that a variance is appropriate, not only based upon his role in the conspiracy, but also based upon Mr. Allenbaugh's review of similarly situated defendants, which indicated that more than half of similarly situated defendants received a sentence below their Guidelines range.

Once more, Mr. Glover is not attempting to dimmish his acceptance of responsibility. Mr. Glover acknowledges that his conduct was illegal, and he is remorseful for his actions. However, the purpose of sentencing includes providing just punishment for the seriousness of the offense. Thus, it is critical that the Court be cognizant of the fact that Mr. Glover did not supply the vast majority of the drugs and had no link to the currency involved in this matter.  Hence, Mr. Glover pled guilty to possession of psilocin, not possession of marijuana or any other drug. Based on Mr. Glover's true involvement, which does not include the vast majority of the converted drug weight referenced in the PSR, he respectfully submits that a variance is appropriate in this matter.

III.  **CONCLUSION**

Mr. Glover respectfully requests that this Honorable Court consider the foregoing facts and circumstances, as well as additional arguments to be adduced at the sentencing hearing, in fashioning a sentence that is sufficient, but not greater than, that which necessary to comport with the principles and purposes of federal sentencing set forth in 18 U.S.C. § 3553(a).

Respectfully Submitted,

/s/ Natalie Archer
Natalie Archer
SBN 24000441
801 S. Fillmore, Ste 710
Amarillo TX 79101

/s/ Eric F. Long
ERIC F. LONG (0093197)
Friedman & Nemecek, L.L.C.
1360 East 9th Street, Suite 650
Cleveland, OH  44114
Ph. (216) 928-7700
E-Mail: efl@fanlegal.com

**List of Exhibits**

**Exhibit A:**    Affidavit of Damarcus Grabert

**Exhibit B:**    Letter of Support from Graneshia Glover

**Exhibit C:**    Letter of Support from Brittany Terrell

**Exhibit D:**    Letter of Support from Paul Muse

**Exhibit E:**    Letter of Support from Viv Cortez

**Exhibit F:**    Letter of Support from Alanna Fredieu-Porche

**Exhibit G:**    Letter of Support from Benita Luna

**Exhibit H:**    Letter of Support from Carolyn Sanon

**Exhibit I:**    Letter of Support from Jamal Darling

**Exhibit J:**    Letter of Support from Kashmire Moore

**Exhibit K:**    Letter of Support from Lauren Barnhill

**Exhibit L:**    Letter of Support from Tracey Evans

**Exhibit M:**    Declaration of Mark Allenbaugh