

April 23, 2022

**Declaration of Mark H. Allenbaugh,
Chief Research Officer, Sentencing Stats, LLC.**

I, Mark H. Allenbaugh, being of majority age and having personal knowledge of the matters set forth below, do declare as follows pursuant to 28 U.S.C. § 1746:

1. I am the Chief Research Officer and Co-Founder of Sentencing Stats, LLC ("SSLLC"), a research firm that provides statistical analysis of U.S. Sentencing Commission sentencing data to legal professionals across the country, and am a former staffer in the Office of General Counsel to the U.S. Sentencing Commission. My biography is attached hereto.

2. On or about, February 21, 2022, SSLLC was retained with regard to the matter of *United States v. Grant Leonard Glover*, 2:21-cr-045-Z(02) (N.D. Tex.), to analyze the U.S. Sentencing Commission's publicly available datafiles[1] for similarly situated offenders matching the following criteria:

    a. sentenced under USSG §2D1.1,

    b. with a Total Offense Level ("TOL") of 27,

---

[1] The Commission's public datafiles are available at https://www.ussc.gov/research/datafiles/commission-datafiles.

EXHIBIT
M

Grant Glover
Sentencing Data Analyses                                    Page **2** of **11**
April 23, 2022

    c.    in Criminal History Category IV,

    d.    not subject to any mandatory minimum or consecutive sentence,

    e.    subject to a statutory maximum penalty of at least 240 months (20 years),

    f.    who did not receiving any government-sponsored motion for a downward departure pursuant to USSG §§5K1.1, 5K3.1 or otherwise,

    g.    was not subject to any mandatory minimum or mandatory consecutive term of imprisonment, and

    h.    was subject to a statutory maximum penalty of at least 240 months.

3.   SSLLC utilized the SPSS version of the Commission's datafiles, which contain sentencing data on over one million individuals sentenced under the Guidelines from fiscal years 2006 through and including 2020, the latest datafile currently available.

4.   Each individual sentence reported in the datafiles is assigned hundreds of variables reporting a variety of relevant information including the actual sentence imposed, the final applicable sentencing guideline as determined by the court, the final (i.e., total) offense level, the criminal history category, and whether the sentence was the result of a government motion for a departure or a court-initiated downward variance, among many other factors.

Grant Glover
Sentencing Data Analyses                                    Page **3** of **11**
April 23, 2022


5.  All the variables reported in the datafiles are defined in the U.S. Sentencing Commission's Variable Codebook for Individual Offenders (1999-2020).[2]  The relevant variables SSLLC generally utilizes and analyzes are listed and defined below, although not all may have been utilized for the instant analysis.  Some of the variables are proprietary to SSLLC and are so indicated in italics, meaning they are variables generated by SSLLC based on data otherwise contained within the Commission's datafiles.


| Variable | Definition | Note |
|---|---|---|
| Year | Datafile in which sentence was found. | For example, if variable reports 2008, the sentence was found in the U.S. Sentencing Commission's datafile for fiscal year 2008. |
| Guideline (GDLINEHI) | Final sentencing guideline utilized after all grouping performed. | |
| District | The federal district where the sentence was imposed. | |
| STATMAX | The total statutory maximum term of imprisonment for all counts of conviction. | |
| STATMIN | The statutory minimum term of | If there was no applicable minimum, the |

---

[2] The Codebook is available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/datafiles/USSC_Public_Release_Codebook_FY99_FY19.pdf.

Grant Glover
Sentencing Data Analyses
April 23, 2022

| Variable | Definition | Note |
|---|---|---|
| | imprisonment for all counts of conviction. | value is 0. |
| GLMIN | The bottom of the applicable guidelines sentencing range in months. | |
| GLMAX | The top of the applicable guidelines sentencing range in months. | |
| CRIMHIST | Whether the defendant had any criminal history. | 1 means some criminal history including criminal history that otherwise may not be scoreable. 0 means none. |
| USSCIDN | The unique serial number assigned to this defendant by the U.S. Sentencing Commission. | |
| CRIMPTS | The total number of criminal history points determined by the Court. | Not to be confused with the criminal history category. |
| DISPOSIT | The manner of conviction (disposition) whether by trial or plea. | 1 means plea. 2 means nolo contendere. 3 means jury trial. 4 means bench trial. |
| BOOKERCD[3] | Determines | 0 = Within Range |

---

[3] The Commission renamed this variable to SENTRNGE in FY 2018 and changed

Grant Glover
Sentencing Data Analyses                                    Page **5** of **11**
April 23, 2022

| Variable | Definition | Note |
|---|---|---|
| | whether and nature of any departure or variance. | 1 = Upward Departure<br>2 = Upward Departure w/Booker<br>3 = Above Range w/Booker<br>4 = Remaining Above Range<br>5 = 5K1.1/Substantial Assistance<br>6 = Early Disposition/5K3.1<br>7 = Government Sponsored – Below Range<br>8 = Downward Departure<br>9 = Downward Departure w/Booker<br>10 = Below Range w/Booker<br>11 = Remaining Below Range |
| SENTYR | Fiscal year sentence was imposed. | |
| NWSTAT1-NWSTAT5 | The offenses of conviction. | |
| XFOLSOR | The final (or total) offense level as found by the Court. | |
| XCRHISSR | The final criminal history category as found by the Court | |
| AMENDYR | The version of | |

the values.  For consistency purposes and to allow for comparison to earlier fiscal years' datafiles, SSLLC has recreated this variable by translating the new values to old values.

Grant Glover
Sentencing Data Analyses                                    Page **6** of **11**
April 23, 2022

| Variable | Definition | Note |
|---|---|---|
| | the Guidelines Manual applied by the Court as identified by its year of publication. | |
| DSPLEA | The type of disposition, i.e., specific manner of conviction. | 0 = Not Received<br>1 = Received<br>2 = Received Alternate Document<br>3 = Oral Plea Agreement<br>5 = Straight up Plea, No Agreement<br>8 = Trial<br>9 = Guilty Plea, Type Indeterminable |
| MWEIGHT | The marijuana weight equivalency, in grams, of all the drug types coded. | |

## **Findings**

13.  Utilizing the criteria set forth in Paragraph 2 above, 121 cases were identified. Accordingly, each case was subject to an advisory sentencing range of 100 to 125 months.

14.  Of those 121 cases, 64 received a within Guidelines sentence, three received an upward departure or upward variance, and 53 received court-initiated downward departure or variance.

15.  The boxplot below illustrates the sentencing distribution

Grant Glover
Sentencing Data Analyses                                      Page **7** of **11**
April 23, 2022

for all 121 cases (blue boxplot) and separately the 53 cases
that received a court-initiated downward departure or variance
(orange boxplot).   The blue box on the left illustrates the
spread from the first quartile (25th percentile), which was
81.0 months, to the third quartile (75th percentile), which was
100.0 months, coinciding with the bottom of the applicable
Guidelines range.   This indicates that half of all sentences
in this group fell between 81.0 and 100.0 months.   The average
of all sentences is represented by the "x" in the middle of
the box: 89.9 months.   The line extending below the box
indicates the lower bound, which was 57.0 months.    Any
sentences below 57.0 months are considered statistical
anomalies.   The line extending above the box indicates the
upper bound, which was 125.0 months (the top of the Guidelines
range).   Any sentences above 125 months are also considered
statistical anomalies. The sentences ranged from a low of zero
months to 168 months.

Grant Glover
Sentencing Data Analyses                                      Page **8** of **11**
April 23, 2022



16.  The orange boxplot on the right above illustrates the 53
court-initiated downward departures/variances.  As indicated,
half the sentences ranged from 52.5 months to 86.0 months
with an average of 66.8 months.  The line bisecting the
orange box indicates the median sentence: 72.0 months.

17.  The chart below is from the U.S. Sentencing Commission's
*2021 Sourcebook of Federal Sentencing Statistics*.  A bottom-
of-Guidelines sentence of 100 months is greater than either
the average (92 months) or median (80 months) for drug
trafficking offenders in CHC IV.  In fact, it is greater than

the median sentence for those convicted of assault offense in CHC VI (74) and nearly equivalent to the average (106 months).  In fact, it is greater than the overall median sentence for child pornography offenders (90 months), and nearly equivalent to the overall average (108 months).

**Table 27**

**SENTENCE LENGTH IN EACH CRIMINAL HISTORY CATEGORY BY TYPE OF CRIME[1]**
**Fiscal Year 2021**

| | TOTAL | | | I | | | II | | | III | | | IV | | | V | | | VI | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **TYPE OF CRIME** | Mean Mths | Median Mths | N | Mean Mths | Median Mths | N | Mean Mths | Median Mths | N | Mean Mths | Median Mths | N | Mean Mths | Median Mths | N | Mean Mths | Median Mths | N | Mean Mths | Median Mths | N |
| **TOTAL** | 48 | 24 | 56,931 | 36 | 12 | 23,103 | 35 | 13 | 7,978 | 44 | 22 | 9,954 | 56 | 36 | 6,164 | 70 | 48 | 3,845 | 93 | 72 | 5,887 |
| **Administration of Justice** | 13 | 8 | 509 | 10 | 5 | 298 | 10 | 11 | 58 | 15 | 12 | 44 | 17 | 14 | 47 | 20 | 18 | 27 | 33 | 24 | 35 |
| **Antitrust** | 3 | 3 | 6 | 3 | 3 | 6 | -- | -- | 0 | -- | -- | 0 | -- | -- | 0 | -- | -- | 0 | -- | -- | 0 |
| **Arson** | 63 | 48 | 79 | 67 | 30 | 33 | 34 | 36 | 9 | 67 | 54 | 16 | 60 | 51 | 10 | 45 | 30 | 3 | 82 | 78 | 8 |
| **Assault** | 58 | 36 | 657 | 30 | 18 | 243 | 42 | 27 | 70 | 66 | 44 | 106 | 74 | 51 | 89 | 76 | 70 | 51 | 106 | 74 | 98 |
| **Bribery/Corruption** | 20 | 12 | 247 | 19 | 12 | 222 | 20 | 11 | 8 | 20 | 12 | 12 | -- | -- | 2 | -- | -- | 0 | 40 | 16 | 3 |
| **Burglary/Trespass** | 23 | 14 | 62 | 10 | 7 | 22 | 12 | 12 | 7 | 36 | 24 | 9 | 21 | 18 | 5 | 54 | 28 | 8 | 26 | 27 | 11 |
| **Child Pornography** | 108 | 90 | 1,215 | 92 | 78 | 879 | 131 | 120 | 102 | 149 | 121 | 141 | 153 | 135 | 55 | 187 | 180 | 26 | 211 | 204 | 12 |
| **Commercialized Vice** | 14 | 11 | 114 | 10 | 6 | 81 | 24 | 14 | 15 | 17 | 21 | 11 | 13 | 15 | 4 | -- | -- | 0 | 73 | 51 | 3 |
| **Drug Possession** | 1 | 0 | 274 | 1 | 0 | 173 | 1 | 0 | 28 | 0 | 0 | 21 | 0 | 0 | 14 | 2 | 0 | 19 | 5 | 1 | 19 |
| **Drug Trafficking** | 74 | 60 | 17,599 | 50 | 36 | 7,674 | 65 | 57 | 2,064 | 77 | 60 | 2,664 | 92 | 80 | 1,641 | 107 | 96 | 1,071 | 123 | 120 | 2,485 |
| **Environmental** | 2 | 0 | 161 | 2 | 0 | 135 | 2 | 0 | 11 | 3 | 0 | 10 | 3 | 3 | 3 | -- | -- | 1 | -- | -- | 1 |
| **Extortion/Racketeering** | 25 | 15 | 116 | 21 | 8 | 78 | 12 | 12 | 7 | 33 | 30 | 16 | 17 | 12 | 5 | -- | -- | 2 | 46 | 48 | 8 |
| **Firearms** | 48 | 37 | 8,079 | 21 | 12 | 1,217 | 30 | 24 | 772 | 37 | 30 | 1,724 | 50 | 41 | 1,510 | 59 | 54 | 1,112 | 76 | 60 | 1,744 |
| **Food and Drug** | 9 | 1 | 45 | 8 | 1 | 41 | 28 | 12 | 3 | -- | -- | 1 | -- | -- | 0 | -- | -- | 0 | -- | -- | 0 |
| **Forgery/Counter/Copyright** | 16 | 12 | 137 | 9 | 4 | 56 | 7 | 4 | 11 | 13 | 9 | 21 | 22 | 25 | 10 | 22 | 18 | 18 | 31 | 33 | 21 |
| **Fraud/Theft/Embezzlement** | 20 | 12 | 4,512 | 17 | 6 | 3,211 | 21 | 12 | 378 | 24 | 16 | 396 | 32 | 24 | 178 | 39 | 30 | 116 | 37 | 33 | 233 |
| **Immigration** | 13 | 8 | 16,911 | 6 | 4 | 5,505 | 9 | 7 | 3,856 | 13 | 12 | 3,958 | 22 | 18 | 2,031 | 29 | 24 | 991 | 35 | 30 | 570 |
| **Individual Rights** | 34 | 6 | 65 | 36 | 4 | 61 | -- | -- | 1 | -- | -- | 2 | -- | -- | 0 | -- | -- | 1 | -- | -- | 0 |
| **Kidnapping** | 166 | 123 | 92 | 151 | 110 | 34 | 177 | 163 | 15 | 150 | 114 | 16 | 165 | 121 | 14 | 239 | 288 | 5 | 195 | 180 | 8 |
| **Manslaughter** | 69 | 59 | 56 | 61 | 37 | 31 | 87 | 53 | 6 | 70 | 70 | 11 | 70 | 80 | 5 | 108 | 84 | 3 | -- | -- | 0 |
| **Money Laundering** | 57 | 30 | 1,028 | 44 | 24 | 761 | 78 | 58 | 100 | 77 | 59 | 78 | 137 | 84 | 35 | 110 | 60 | 17 | 125 | 120 | 37 |
| **Murder** | 244 | 231 | 257 | 212 | 184 | 88 | 280 | 240 | 31 | 258 | 240 | 43 | 252 | 240 | 34 | 269 | 240 | 23 | 249 | 258 | 38 |
| **National Defense** | 37 | 27 | 215 | 26 | 23 | 174 | 48 | 44 | 16 | 46 | 43 | 6 | 48 | 44 | 4 | -- | -- | 0 | 149 | 130 | 15 |
| **Obscenity/Other Sex Offenses** | 22 | 18 | 297 | 23 | 12 | 34 | 16 | 12 | 29 | 18 | 15 | 76 | 20 | 18 | 63 | 28 | 26 | 48 | 32 | 30 | 47 |
| **Prison Offenses** | 11 | 8 | 529 | 4 | 0 | 22 | 5 | 1 | 10 | 5 | 4 | 133 | 9 | 7 | 117 | 12 | 12 | 90 | 17 | 15 | 157 |
| **Robbery** | 104 | 90 | 1,300 | 82 | 71 | 349 | 89 | 78 | 154 | 99 | 92 | 241 | 114 | 90 | 187 | 117 | 101 | 120 | 137 | 120 | 249 |
| **Sexual Abuse** | 211 | 180 | 1,062 | 202 | 180 | 676 | 201 | 180 | 108 | 233 | 228 | 109 | 233 | 210 | 55 | 263 | 240 | 70 | 215 | 184 | 44 |
| **Stalking/Harassing** | 26 | 18 | 219 | 15 | 12 | 113 | 20 | 18 | 27 | 33 | 30 | 21 | 31 | 27 | 22 | 36 | 33 | 17 | 74 | 46 | 19 |
| **Tax** | 14 | 12 | 421 | 12 | 8 | 347 | 17 | 14 | 37 | 22 | 18 | 28 | 45 | 27 | 5 | -- | -- | 2 | -- | -- | 2 |
| **Other** | 2 | 0 | 667 | 1 | 0 | 539 | 2 | 0 | 45 | 5 | 0 | 40 | 11 | 6 | 19 | 8 | 4 | 4 | 15 | 12 | 20 |

[1] Of the 57,287 cases, 356 cases were excluded due to one of the following reasons:  missing Criminal History Category (355) or missing or indeterminable sentencing information (1).  Sentences of 470 months or greater (including life) and probation were included in the sentence average computations as 470 months and zero months, respectively.  The information in this table includes conditions of confinement as described in USSG §5C1.1. Descriptions of variables used in this table are provided in Appendix A.

Mark H. Allenbaugh,
Chief Research Officer & Co-Founder
Sentencing Stats, LLC

Grant Glover
Sentencing Data Analyses                                    Page **10** of **11**
April 23, 2022


## ALLENBAUGH BIOGRAPHY

Mark H. Allenbaugh, a sentencing and mitigation consultant, is a nationally recognized expert on federal sentencing matters. He is a co-founder of Sentencing Stats, LLC, which provides attorneys and their clients with expert statistical analyses of data and trends reported by the U.S. Sentencing Commission, the Bureau of Prisons, the Bureau of Justice Statistics and other entities. Sentencing Stats, LLC has access to the U.S. Sentencing Commission's sentencing datafiles from 2002 to the present.  These datafiles contain thousands of variables for every defendant sentenced under the U.S. Sentencing Guidelines nationwide, which report pertinent information regarding the offender and the sentence imposed.  These data allow him to provide precise statistical and trend analyses for clients and counsel.

Mr. Allenbaugh holds three B.A.s from the University of Southern California in Philosophy, English, and Religion; an M.A. in Philosophy from Ohio University; and a J.D. from American University's Washington College of Law, where he served as an editor on the Law Review.  Mr. Allenbaugh also has completed coursework toward a Ph.D. in the History and Philosophy of Science at the University of Maryland, College Park.

Prior to entering the private sector, Mr. Allenbaugh served as a Staff Attorney for the U.S. Sentencing Commission.  He has published numerous articles on sentencing policy and criminal justice, which have been cited over 100 times in top U.S. law reviews and journals, and over a dozen times in published federal district and appellate opinions.  His published articles include:

*Sentencing in Chaos: How Statistics Can Harmonize the "Discordant Symphony,"* 32 Fed. Sent. R. 128 (Feb. 2020)

*Unwarranted Disparity: Effectively Using Statistics in Federal Sentencing*, The Criminal Law Reporter, 101 Cr.L. 71, (2017) (co-author)

Caught in the Web of the Criminal Justice System, "Tilting At Windmills, The Misplaced War on Child Pornography," ch. 6, 151-174  (2017)  (Dubin,  Lawrence  J.,  &  Horowitz,  Emily

Grant Glover
Sentencing Data Analyses                              Page **11** of **11**
April 23, 2022


eds.)(contributed chapter)

*Plea Bargain vs. Open Pleas: What the Data Reveal*, 31 White
Collar Crime Rpt. 1 (2017) (co-author)

*The U.S. Sentencing Commission's 2017 Amendment Cycle:*
*Acceptance of Responsibility and Relevant Conduct*, 12 White
Collar Crime Rpt. 288 (2017) (co-author)

*"Drawn from Nowhere": A Review of the U.S. Sentencing*
*Commission's White-Collar Sentencing Guidelines and Loss Data*,
26 Fed. Sent. R. 19 (2013)(cited as authority in *United States*
*v. Musgrave*, 647 Fed. Appx. 529, 538 (6th Cir. 2016)).

*Federal Sentencing Tips*, 37 Champion 40 (2013)(co-author)

*Trends and Practice Tips for Representing Child Pornography*
*Offenders at Sentencing*, 27 Crim. Justice 29 (2012)(co-author)

*At a "Loss" for Justice: Federal Sentencing for Economic*
*Offices*, 25 Crim. Justice 22 (Winter 2011)(co-author)

Sentencing, Sanctions, and Corrections: Federal and State Law,
Policy, and Practice, 2nd ed., Foundation Press (2002).